UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Kathleen L. Price**

    **v.**      Case No. 07-cv-166-PB
           Opinion No. 2008 DNH 164
**Michael J. Astrue, Commissioner,
Social Security Administration**


## MEMORANDUM AND ORDER

Kathleen Price asks me to reverse the Commissioner's determination that she is not eligible for disability insurance benefits.  The Commissioner seeks an order affirming his decision.  For the reasons set forth below, I grant in part Price's motion to reverse, deny the Commissioner's motion to affirm, and remand this case to the Social Security Administration.


## I.  BACKGROUND[1]

Kathleen Price applied for disability insurance benefits on

---

[1] The background information is drawn from the Joint Statement of Material Facts (Doc. No. 9) submitted by the parties.  Citations to the Administrative Record Transcript are indicated by "Tr."  Because Price's mental disability claims are the only claims relevant to this appeal, this recitation of the facts focuses on evidence relating to Price's mental health.

May 24, 2004, claiming an onset date of June 1, 2002.  Tr. at 45-47.  At the time of her application, she was fifty years old.  Id. at 45.  She had past relevant work experience as a dish washer, a certified nurse's aid, and a fitting room attendant.  Id. at 16, 50.  After her claim was denied, Price requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 2, 2005.  Id. at 33, 274-95.  At the hearing, Price waived her right to bring an attorney or other representative.  Id. at 276.  The ALJ decided that Price was not entitled to benefits.  Id. at 13-25.  On May 11, 2006, the Appeals Council denied Price's request for review, thereby making the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner").  Id. at 6-8.  On April 6, 2007, the Appeals Council denied Price's request to reopen the ALJ's decision to consider new evidence of her mental disability.  Id. at 10-11.

**A.   Evidence of Price's Mental Disability in the Administrative Transcript**

The record first references Price's mental health on April 2, 2002, when Price stated that her prescription for Zoloft was no longer "tak[ing] the edge off her 'nerves.'"  Id. at 98.  The

treating nurse practitioner recommended counseling to help with Price's stress and anxiety, and she prescribed a trial of Klonopin.  Id. at 99.  On April 23, 2002, Price indicated that she was more worried about her emotional problems than her physical ones.  Id. at 101.  (She continued to feel the same by the time of the hearing in front of the ALJ.  Id. at 284.)

On May 22, 2002, Price told the treating nurse practitioner that Zoloft was still not controlling her anxiety.  Id. at 109.  The nurse practitioner noted, however, that Price had neither taken steps to fill the prescription for Klonopin nor sought counseling.  Id. at 109. In another visit in July, Price reported that she was under a great deal of stress at home and was very frustrated with her family.  Id. at 118.  The nurse practitioner observed that Price was weepy during the visit.  Id. at 118.

In August 2002, the treating nurse practitioner noted that Price continued to have emotional and financial difficulties at home, including an incident in which Price's son threw her against a wall, and she continued picking at her skin due to anxiety.  Id. at 120.  Price reported that her financial difficulties prevented her from filling her prescriptions.  Id. at 120.  In September, Price reported that she felt depressed

regarding her daughter. Id. at 129. In November, Price reported experiencing sleep disturbance, appetite disturbance, and a lack of energy. The treating nurse practitioner concluded that Price's family-related stress was overwhelming the treatment for her depression. Id. at 146. The stress of dealing with her family, in particular her daughter, was even causing physical problems, as she complained during a January 2003 visit. Id. at 151.

In September 2003, the treating nurse practitioner noted that Price denied experiencing "depression, anxiety, and mental disturbance," but the nurse practitioner took no steps to curtail or cancel Price's prescriptions for Zoloft and Klonopin. Id. at 179, 181. About one month later, though, Price's chief complaint was depression and she complained of sleeping problems. While meeting with a nurse practitioner, Price cried when relating her difficulties at home, but also stated that she did not have enough money to fill her prescriptions and asserted that she did "not care about herself." Id. at 188. In November 2003, Price's problems at home escalated when she struck her daughter, causing the daughter to leave for a shelter. Dr. Hayes identified a need to counsel Price about her anger management. Id. at 196.

At a visit in February 2004, Price complained of depression, but also expressed her desire to obtain a certified nurses assistant job. Id. at 211. In March, Price informed Dr. Hayes that she had been taking neither Zoloft nor Klonopin for several months due to their cost, and Dr. Hayes noted that Price was tearful, shaky, anxious and discouraged. Id. at 95. Her situation had improved by April, and the treating nurse practitioner noted that Price was "doing well stress wise at home, feeling more at ease." Id. at 230.

Nevertheless, Dr. Hayes responded to a Social Security questionnaire in June 2004 that Price had "multiple psychosocial issues." Id. at 241. He repeated his findings of depression, anxiety, impulsivity and neurodermatitis in a letter to the Disability Claims Adjuster in September. He also opined, "I believe it is near impossible for Kathy to hold down gainful employment." Id. at 252.

Nurse Practitioner Blood ("NP Blood") of Concord Psychiatric Associates treated Price for depression. Id. at 285. The sole evidence in the administrative record of her treatment and diagnoses, however, consists of a single medical source statement. NP Blood's medical source statement concluded that

Price had moderate, marked, and extreme impairments affecting her ability to function in day-to-day life. It further stated that Price's symptoms included poor concentration, impaired memory, depressed mood, tearfulness, anxiety, agitation, poor coping skills with stress management, and thoughts of suicide. Id. at 271-72. The medical source statement consisted entirely of conclusions, however, with no supporting documentation.

At the hearing before the ALJ in November, Price testified that she was very depressed and felt that she could not "go out in the working world without breaking down and crying." Id. at 284. She reported that she was on multiple medications for her emotional problems and was receiving treatment from Dr. Hayes, Nurse Practitioner Joyce Blood, and Blair Ambrose (a counselor at Riverbend). Id. at 285-89. She also commented that her family caused her considerable stress and she was often afraid to go out in public. Id. at 292.

## B.  **The ALJ's Decision**

In his March 2, 2006, decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 1520 to determine whether Price was disabled. Id. at 16. At the third step, the ALJ determined that Price's depression, anxiety,

-6-

and impulsive behavior did not meet or equal the criteria of § 12.04 of the Listing of Impairments.[2]  Id. at 24.  This decision was founded on the ALJ's conclusion that the record contained evidence of appetite disturbance but no change in weight; sleep disturbance that was solely attributable to physical pain; inconsistent reports of decreased energy; no feelings of guilt or worthlessness; no significant difficulty with concentration or thinking except when she "has alot on her mind" (sic); and no thoughts of suicide,[3] hallucinations, or paranoid thinking.  Id. at 23.

---

[2] To meet the criteria for a depressive syndrome under § 12.04 of the Listing of Impairments, Price would first need to establish a medically documented persistence, either continuous or intermittent, of at least four of the following: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with a change in weight; (3) sleep disturbance; (4) psychomotor agitation or retardation; (5) decreased energy; (6) feelings of guilt or worthlessness; (7) difficulty concentrating or thinking; (8) thoughts of suicide; or (9) hallucinations, delusions, or paranoid thinking.  Listing of Impairments § 12.04, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  She would then need to establish that this disorder caused marked restrictions in at least two areas of functioning or a medically documented history of a chronic affective disorder with certain other factors.  Id.

[3] It is not clear why the ALJ concluded that there was no evidence of thoughts of suicide in the record.  Although NP Blood's medical source statement did not specify the period during which Price experienced such thoughts, it did state that Price experienced "[t]houghts of suicide."  See Tr. at 272.

In assessing Price's residual functional capacity ("RFC"), the ALJ found that she was able to perform light work with limitations in stress tolerance.  Id. at 25.  Based on this RFC, the ALJ found at step four that Price could return to her past relevant work ("PRW") as a dishwasher and was therefore not disabled.  Id. at 24-25.

## C.    The Appeals Council Decision

After the ALJ's decision, Price requested a review by the Appeals Council.  The Appeals Council denied review.  Id. at 6.  After obtaining counsel, Price then requested that the Appeals Council reopen the decision, submitting records from Concord Psychiatric Associates and Riverbend Mental Health, Inc. in support of that request.  The Appeals Council denied her request to reopen.  Id. at 10.

## D.    Evidence of Price's Disability in the New Materials

The new medical information that Price submitted to the Appeals Council consists of two sets of treatment records, some of which were in existence at the time of Price's November 2, 2005, hearing before the ALJ and some of which were generated later.  The first set of records consists of the office notes of NP Blood at Concord Psychiatric Associates from June 2005 through

January 2006.  See Claimant's Request for Reconsideration of Appeals Council's Denial of Claimant's Request for Review of Administrative Law Judge's Decision Dated March 2, 2006 and For Extension of Time to File Further Appeals with the U.S. District Court, Ex. 1A, Matter of Kathleen L. Price, Claim No. 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 (Soc. Sec. Admin. June 27, 2006) (hereinafter "Blood").  The second set of records consists of clinical evaluations and office notes from Riverbend Mental Health from September 2005 to May 2006.  See Claimant's Request for Reconsideration, Ex. 1B., supra (Soc. Sec. Admin. June 27, 2006) (hereinafter "Riverbend").  For clarity, I describe both sets of records together in chronological order.

NP Blood observed that Price was experiencing "anhedonia" during a June 2005 visit.  (Blood at 1.)  The counselors at Riverbend noted "anhedonia" or a "markedly diminished interest or pleasure in all activities every day" lasting from September 2005 to February 2006.  (Riverbend at 9, 12, 39, 43, 46, 68.)  During her June 2005 visit to Concord Psychiatric, Price complained of having a low appetite.  (Blood at 2.)  The counselors at Riverbend observed "appetite disturbance" over a period of four months starting in September 2005.  (Riverbend at 9, 12, 39, 43,

-9-

46.)  Price mentioned that she had a significant change in weight from this symptom (Riverbend 26, 33), but later a counselor noted that Price's weight had not changed (Riverbend at 68).  NP Blood noted the symptom of "sleep disturbance" during three separate visits in August 2005, September 2005, and January 2006.  (Blood at 3, 5, 7.)  The symptom persisted for three months while Price was in treatment at Riverbend.  (Riverbend at 9, 11, 12, 16, 39, 43.)  NP Blood originally attributed Price's sleep disturbance to physical suffering from back pain (Blood at 1), but she later characterized it as a symptom of Price's depression (Riverbend at 9).  NP Blood noted that Price suffered from "low motivation . . . and low energy" during a June 2005 visit.  (Blood at 1.)  The counselors at Riverbend described the symptom as "decreased energy" over a period of four months starting in September 2005.  (Riverbend at 9, 11, 39, 40.)  In August and September 2005, NP Blood noted the symptom of feelings of guilt and worthlessness.  (Blood at 3, 5.)  The counselors at Riverbend observed that these feelings lasted from September 2005 to February 2006.  (Riverbend 9, 11, 12, 16, 39, 40, 43, 46, 73.)  NP Blood recorded that Price was having thoughts of suicide in June and August of 2005.  (Blood at 1, 2, 3.)  At sessions at Riverbend, Price communicated

thoughts of suicide persisting for eight months, starting in July 2005. (Riverbend at 2, 9, 11, 12, 17, 39, 40, 43, 46, 56, 61, 68.)

About two weeks after her hearing in November 2005, Price's suicidal thoughts escalated to the point that she had herself voluntarily admitted to Concord Hospital for a psychiatric hospitalization. At the hospital, the attending physician observed that Price was experiencing decreased appetite with a change in weight, sleep disturbance, decreased energy, feelings of guilt, thoughts of suicide, and psychomotor slowing. (Riverbend at 22, 26, 30, 33.)

## II.   **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the decision of the ALJ. My review is limited to determining whether the ALJ used the proper legal standards and found facts based upon the proper quantum of evidence. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ's findings of fact are accorded deference as long as they are supported by substantial evidence. Ward, 211 F.3d at 655. Substantial evidence to support the ALJ's factual findings exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). If the substantial evidence standard is met, the ALJ's factual findings are conclusive even if the record "arguably could support a different conclusion." Id. at 770. The ALJ's findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35.

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the role of this court, to resolve conflicts in the evidence. Id.

### III. **ANALYSIS**

Price's primary argument is that the matter should be

remanded because the ALJ failed to adequately develop the record.[4]  The ALJ's decision to deny benefits rested in part on the apparent lack of evidence of certain symptoms of depression required to meet Listing 12.04.  Price argues that the ALJ was at fault for the absence of this evidence because Price was unrepresented at the hearing, the absence of these records constituted a gap in the record, the ALJ was aware of that gap, the ALJ took insufficient efforts to obtain the records from NP Blood and Riverbend that could have filled that gap, and the gap might reasonably have affected the ALJ's ultimate decision to deny benefits.

As the Supreme Court has explained, "Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 110-11 (2000).  The ALJ's duty to develop the record is

---

[4] Price also argues that the case should be remanded because (1) Price's decision not to hire an attorney or other representative was not knowing and voluntary, and (2) the ALJ failed to accord the proper weight to NP Blood's assessment of Price's non-exertional limitations.  The first argument is clearly meritless.  I need not consider the second because it is mooted by the need to consider additional evidence from NP Blood on remand.

heightened if the plaintiff is unrepresented by counsel at the hearing, Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 142 (1st Cir. 1987), or if there is a gap in the record and the ALJ could have filled in that gap without undue effort, Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980) ("we believe this responsibility increases . . . where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled.").

 The case of Heggarty v. Sullivan, 947 F.2d 990 (1st Cir. 1991), whose facts are similar to the case at bar, is instructive. In Heggarty, the claimant was unrepresented and proffered neither office notes nor reports from a Dr. Bixby, who was treating the claimant's allergies at the time of the hearing. 947 F.2d at 992. The ALJ told the claimant that he would obtain the necessary information from Dr. Bixby after the hearing, but failed to do so. Id. Relying primarily on older treatment records, the ALJ then determined that the claimant's eczema did not meet Listing 8.05. Id. at 994. The court found that the ALJ failed to adequately develop the record because the absence of

Dr. Bixby's treating records created a gap in the record as to the current severity of the claimant's eczema. Id. at 997. Without Dr. Bixby's records, the only medical evidence on this point consisted of a brief set of hospital records indicating that the claimant received allergy shots in 1988, a "cursory" report from a consulting rheumatologist describing the claimant as suffering from "severe eczema," and RFC forms from two non-examining physicians. Id.

For the reasons set forth below, I agree with Price that the ALJ breached his duty to develop a full and fair record from which to make a reasonable determination regarding Price's disability.

First, because Price was unrepresented during the hearing, the ALJ had a heightened duty to develop the record. See Evangelista, 826 F.2d at 142.

Second, a gap existed in the record in that it contained neither the office notes supporting NP Blood's diagnoses nor any treatment records from Riverbend. The ALJ was clearly aware of this gap; the ALJ asked Price several questions about her treatment at Riverbend during the hearing and specifically mentioned the absence of NP Blood's office notes in his decision.

-15-

Tr. at 21, 288-89.  Additionally, it is significant that NP Blood's medical source statement identified "[t]houghts of suicide" as one of Price's symptoms.  This means that the record before the ALJ alerted him to the possibility that this symptom could be both persistent and medically documented.  This triggered a duty on the part of the ALJ to further develop the record regarding that and other symptoms of a depressive syndrome.  See Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir. 1982) (finding that the ALJ had a duty, once on notice of the fact that the claimant's mental illness might have originated earlier, "to develop the record of the etiology of the illness, its course, and its severity.").

It would not have required "undue effort" for the ALJ to obtain the missing records, because the ALJ presumably could have remedied their absence by sending more specific follow-up requests to NP Blood and to Riverbend.  See Currier, 612 F.2d at 598.  Moreover, the efforts the ALJ did take to obtain additional records from Price's treating sources were inadequate, particularly in light of the ALJ's statement to Price that he would try to obtain medical records from NP Blood and Counselor Ambrose and "get all that information into the record."  Tr. at

294; see Heggarty, 947 F.2d at 997 (finding a heightened duty to develop the record where the ALJ specifically informed the claimant that he would arrange to obtain the treating physician's records).  Under the relevant regulations, the ALJ is to "make every reasonable effort" to assist claimants in obtaining medical reports from their treating sources.  20 C.F.R. § 404.1512(d).  "Every reasonable effort" means an initial request for evidence from a medical source and one follow-up request if the evidence is not received.  20 C.F.R. § 404.1512(d)(1).  The ALJ's efforts to obtain medical records fell short of this standard.  Following the hearing, the ALJ requested additional medical records from NP Blood,[5] but did not attempt to contact Counselor Ambrose, possibly out of an erroneous belief that NP Blood was also employed by Riverbend.  Moreover, when NP Blood responded by providing completed physical and mental medical source statements but omitted her office notes, the ALJ failed to make a follow-up request for those notes.  Tr. at 84, 267-73.

---

[5] The ALJ also twice requested updated records from Dr. Hayes.  Tr. at 85, 86.  Those records are not, however, material to the issues addressed in this appeal.

Finally, the resulting gap in the record is significant. Had the ALJ obtained NP Blood's office notes and the Riverbend treatment records, his decision might reasonably have been different. Rather than merely having NP Blood's conclusory assertions of disability, the ALJ would have had an extensive treatment record that provides substantial evidence of the affective disorder symptoms he found lacking in the record. If credited, these medical records show that Price repeatedly experienced anhedonia and a pervasive loss of interest, suicidal thoughts, feelings of guilt and worthlessness, decreased energy, and sleep disturbance. Together, these symptoms appear to satisfy the first prong of the listing for an affective disorder disability (a "[m]edically documented persistence, either continuous or intermittent, of . . . [d]epressive syndrome characterized by at least four" out of nine possible symptoms, see Listing of Impairments § 12.04, 20 C.F.R. Pt. 404, Subpt. P, App. 1). If that first prong is satisfied, the ALJ would need to consider whether those symptoms resulted in marked restrictions in at least two areas of functioning or a medically documented history of a chronic affective disorder with certain other factors — questions that he never reached in his March 2, 2006,

decision. See Tr. at 23; see also Listing of Impairments § 12.04, 20 C.F.R. Pt. 404, Subpt. P, App. 1. For the foregoing reasons, then, the ALJ failed in his duty to adequately develop the record.

## IV. CONCLUSION

The ALJ failed to adequately develop the administrative record. This failure justifies a remand under sentence four of 42 U.S.C. § 405(g).[6] See Seavey v. Barnhart, 276 F.3d 1, 13 (1st Cir. 2001) ("Sentence six has been referred to as a 'pre-judgment remand,' employed where the federal court has not ruled on the validity of the Commissioner's position, while sentence four has been referred to as a 'post-judgment remand.'"); see also Buckner v. Apfel, 213 F.3d 1006, 1013 (8th Cir. 2000) (remanding under sentence four to correct ALJ's failure to develop the record). Accordingly, I grant in part Price's motion to reverse (Doc. No. 7), deny the Commissioner's motion to affirm (Doc. No. 8), and remand this case to the Social Security Administration. The

---

[6] Because the ALJ's failure to develop the administrative record requires a sentence four remand, I need not address Price's alternative argument for a remand under sentence six of 42 U.S.C. § 405(g).

clerk is directed to enter judgment in accordance with this order and close the case.

    SO ORDERED.

                                      /s/Paul Barbadoro
                                      Paul Barbadoro
                                      United States District Judge

September 2, 2008

cc:   Elizabeth R. Jones, Esq.
      Robert Rabuck, Esq.